IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BILLY MOORE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| vs. | : | 1:20-CV-4140-CC |
| | : | |
| NCR CORPORATION PLAN ADMINISTRATION COMMITTEE, and FIDELITY WORKPLACE SERVICES, LLC, | : : : : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 15]. For the reasons stated below, the Court **GRANTS** the motion.

**I.   BACKGROUND**

A.   Facts

Plaintiff Billy Moore ("Plaintiff" or "Billy") is the brother of Jimmy L. Moore ("Jimmy"), who was an employee of NCR Corporation ("NCR") and a participant in the 401(k) Plan and Pension Plan (collectively referred to herein as the "Plans"). (First Am. Compl. [Doc. No. 24] ¶ 1.) The "Named Fiduciary" for both Plans is the Plan Administration Committee. (Id. ¶ 8.) The Plan Administrator for both Plans is also the Plan Administration Committee. (Compl., Ex. 1 at § 11.3, Ex. 2 at § 8.3.)

NCR is the Plan Sponsor.  (First Am. Compl. ¶ 2.)  Fidelity Workplace Services, LLC ("Fidelity") is the recordkeeper for the Plans.  (Id. ¶¶ 3, 9.)

The 401(k) Plan defines a "Beneficiary" as the:

> person(s), trust(s) or organization(s) designated to be the Beneficiary by the participant electronically or in writing.  Unless designated otherwise, the Beneficiary of a married Participant shall be his spouse.  In the event a married Participant designates someone other than his spouse as Beneficiary, such initial designation or subsequent change shall be invalid unless the spouse consents in a writing, which names the designated Beneficiary, acknowledges the effect of the designation, and is notarized, or witnessed by a Plan representative.

(Compl., Ex. 1[1] at § 1.6.)  The Pension Plan defines a "Beneficiary" as:

> the individual designated by the Participant in writing to receive the Participant's PensionPlus Benefit in the event of the Participant's death prior to retirement.  If a married Participant designates someone other than the spouse as Beneficiary, the spouse must consent in writing, and such consent must name the designated individual, acknowledge the effect of the election and be witnessed by a Plan representative or notarized.

(Compl., Ex. 2 at § 6.4(c).)

On or about December 25, 2010, Jimmy signed an NCR Beneficiary Election form naming his brother Billy as sole beneficiary of Jimmy's 401(k) benefits under the Savings Plan, pension benefits under the Pension Plan, and all insurance

---

[1] The Court may consider exhibits to the Complaint without converting the motion to dismiss into a motion for summary judgment.  See Crowder v. Delta Air Lines, Inc., 963 F.3d 1197, 1202 (11th Cir. 2020) ("Exhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purposes.").

benefits.  (Id. ¶ 10.)  Jimmy was not married at the time that he signed this Benefits Election form.  (Id.)

On May 24, 2016 Jimmy was diagnosed with esophageal cancer.  (Id. ¶ 11.)  On July 22, 2016, Jimmy signed his Last Will and Testament naming Billy as his sole heir and executor of his estate.  (Id.)

On July 26, 2016, Jimmy entered into a Prenuptial Agreement with Beulah Jean James ("Beulah"), whereby Beulah waived all rights to any 401(k) and retirement benefits held by Jimmy and consented to Jimmy appointing another beneficiary to receive those benefits.  (Id. ¶ 12.)  In the Prenuptial Agreement, Jimmy and Beulah specifically agreed that neither would "claim, demand, assert any right to, take or receive any part of the property of the other as described in Schedules 1 and 2."  (Id. ¶ 13.)  Schedule 1 specifically includes the details of Jimmy's 401(k) and pension benefits as his separate property.  (Id.)  Moreover, in Section 4.4 of the Prenuptial Agreement, Jimmy and Beulah specifically and explicitly renounced any right to the retirement accounts held by the other.  (Id. ¶ 14.)  Section 4.4 further provides that "each party shall execute such spousal consents or waivers, if any, as may be required to effect the desired beneficiary designation of the account owner."  (Id.)  On August 17, 2016, Jimmy and Beulah were married.  (Id. ¶ 15.)

During a call with NCR on or about February 14, 2017, an NCR representative advised Jimmy that he should speak to a Fidelity "advisor" about confirming his beneficiary under the Plans. (Id. ¶ 16.) On or about March 20, 2017, Jimmy and Billy had a phone appointment with Fidelity Financial Consultant, Dylan Saulsberry ("Mr. Saulsberry"). (Id. ¶ 17.) Jimmy advised Mr. Saulsberry of his recent marriage and that his brother Billy was to be his beneficiary and his sole heir. (Id.) Mr. Saulsberry stated that "right now Billy [is] set to inherit all." (Id.) On March 22, 2017, Jimmy's Fidelity New Account Profile showed Billy as 100% beneficiary. (Id. ¶ 18.)

On August 12, 2017, Jimmy passed away. (Id. ¶ 19.) Following Jimmy's death, Billy began taking steps to secure his interest in the 401(k) Plan and Pension Plan benefits. (Id. ¶ 20.) Plaintiff alleges that NCR and/or NCR PAC and Fidelity were "advised of the Prenuptial Agreement" by Mr. Saulsberry just days after Jimmy's death. (Id. ¶ 21.) On August 25, 2017, Billy called Fidelity, as he had not heard anything about a payout of benefits. (Id. ¶ 22.) On August 29, 2017, Billy again called Fidelity requesting status updates and advised Fidelity again of Jimmy and Beulah's Prenuptial Agreement. (Id.) Fidelity advised that the matter was under review. (Id.) On September 1, 2017, Billy contacted Fidelity to advise he had Jimmy's death certificate, which Billy provided to Fidelity. (Id. ¶ 23.)

Despite prior knowledge that Billy was listed as Jimmy's beneficiary and purported to have a claim as the named beneficiary for the Plans' funds, knowledge of the Prenuptial Agreement between Jimmy and Beulah and the requirement that Beulah execute a spousal consent to effectuate Jimmy's desired beneficiary designation of Billy, and without prior notice to Billy, Plaintiff alleges that Fidelity, acting with the full knowledge and approval of NCR PAC, disbursed the funds to Beulah on or about October 5, 2017. (Id ¶ 25.) Defendants did not give Billy any prior notice of their intention to pay Jimmy's benefits to Beulah, and Defendants did not interplead the funds, although they were fully aware of Billy's and Beulah's competing claims thereto, prior to distributing the funds to Beulah. (Id.) On October 13, 2017, Plaintiff learned from NCR Retirement Plans Manager Cathy Stewart that Defendants had already disbursed the funds to Beulah. (Id. ¶ 26.)

Immediately upon learning of the distribution, Billy filed a lawsuit in Alabama state court against Beulah on October 13, 2017, alleging breach of the Prenuptial Agreement. (Id. ¶ 27.) On November 7, 2017, the Alabama trial court entered a temporary restraining order against Beulah, which prohibited her from utilizing the funds and ordered Beulah to pay the funds into the court's registry. (Id. ¶ 28.) Permanent injunctions against Beulah followed. (Id.) Summary

judgment was granted in favor of Billy, and the trial court's decision was upheld by the Alabama Supreme Court.  (Id.)

Nevertheless, despite Billy's diligent efforts to obtain the funds disbursed by Fidelity and NCR PAC to Beulah and despite injunctions and final orders to the contrary, Plaintiff has only been able to recover approximately half of the funds that Defendants disbursed to Beulah.  (Id. ¶ 29.)  As a result, as of the date that Billy commenced the lawsuit pending before this Court, Billy has been unable to recover approximately $202,598.52 in funds and has incurred greater than $57,653.88 in attorneys' fees and court costs.  (Id. ¶ 30.)

After learning of the disbursement of funds to Beulah and as instructed by NCR Retirement Plan Manager Stewart, on October 27, 2017, Billy submitted a claim for the 401(k) and Pension Plan benefits, which included a copy of the Prenuptial Agreement and a printout from Fidelity's website dated October 21, 2017, showing Billy still listed as Jimmy's beneficiary.  (Id. ¶ 31.)  His claim was denied.  (Id.)  The claim denial letter explained that the claim was denied because Beulah had not executed a valid spousal waiver and, as mandated by the United States Supreme Court, an extraneous prenuptial agreement could not trump the clear terms of the plan.  (Compl., Ex. 5.)  The claim denial informed Billy of his internal appeal rights and explained that if his internal appeal was denied, he would have the right to bring a lawsuit within one year.  (Id.)

On January 25, 2018, Billy appealed the denial of his claim, and the appeal was denied. (Id. ¶ 32.) By letter dated June 6, 2018, Billy submitted additional arguments to NCR as to why he believed the disbursement was imprudent and violated fiduciary pronouncements under the Employee Retirement Income Security Act of 1974 ("ERISA") and requested relief for the same. (Id.) On August 9, 2018, NCR's counsel informed Billy's counsel that no relief would be provided. (Id.)

On July 27, 2020, Billy submitted a letter to Fidelity notifying Fidelity of his claims against it for breach of fiduciary duties under ERISA and seeking relief for the same. (Id. ¶ 33.) On September 14, 2020, Fidelity responded to Billy's claim in writing and denied any breach of fiduciary duties. (Id. ¶ 34.)

B.   Procedural History

On October 7, 2020, Plaintiff commenced this lawsuit, asserting claims under § 502(a)(3) for breach of fiduciary duties and § 502(g) for attorney's fees. Plaintiff filed his First Amended Complaint on March 7, 2021 and alleges therein that Defendants breached the fiduciary duty of prudence by failing to file an interpleader action in order to allow a court to decide the dispute between Plaintiff and Beulah for the 401(k) and Pension Plan benefits. Plaintiff further alleges that Defendants breached the fiduciary duty of disclosure by failing to disclose their intent to disburse the 401(k) and Pension Plan benefits to Beulah. In addition to

seeking to recover the losses allegedly caused by Defendants' breaches of fiduciary duties, Plaintiff also seeks to recover reasonable attorneys' fees and costs of bringing this action pursuant to 29 U.S.C. § 1132(g).

Defendants move the Court to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure (12)(b)(6). The parties have fully briefed the motion, and the motion is ripe for the Court's review.

## II.   STANDARD OF REVIEW

The Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation and punctuation omitted). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citation omitted). Additionally, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678 (citation omitted).

Instruments attached to a pleading are part of the pleading, and the Court may consider them for Rule 12(b)(6) purposes. Fed. R. Civ. P. 10(c). Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.")

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citation omitted). Likewise, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke

v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford Cty., 960 F.2d 1002, 1010 (11th Cir. 1992).

### III.   ARGUMENTS OF THE PARTIES

Defendants argue that Plaintiff's claims should be dismissed for five separate reasons.  First, Defendants maintain that Plaintiff lacks standing because he is not an ERISA beneficiary.  Second, Defendants argue that they had no duty to provide advance notice or to interplead the funds.  Third, Defendants state that Plaintiff's claims are barred by the one-year statute of limitations.  Fourth, Defendants assert that the Complaint fails to demonstrate that Defendants were fiduciaries or engaged in any fiduciary acts at any relevant time.  Finally, Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel.

In response, Plaintiff first argues that he has standing to sue because he has a "colorable claim" to benefits.  Second, Plaintiff maintains that Defendants owed fiduciary duties of prudence and disclosure to him, as the named plan beneficiary and/or colorable claimant to Jimmy's ERISA Plan benefits.  With respect to Defendants' statute of limitations argument, Plaintiff responds that the Plans' contractual limitations period for benefits and interference claims has no applicability to the breach of fiduciary duty claims that Plaintiff asserts in this lawsuit. Plaintiff further argues that he has timely brought his claims within the

3-year statute of limitations period that applies to fiduciary breach claims. Plaintiff next contends that he has properly alleged Defendants' fiduciary status and fiduciary actions. Finally, Plaintiff argues that the collateral estoppel doctrine is inapplicable because the critical issues in this case pertaining to the alleged fiduciary breaches were not litigated at all in the Alabama litigation.

### IV.   DISCUSSION

ERISA § 502 provides the enforcement mechanisms for breaches of ERISA's requirements. A participant may bring an action under ERISA § 502(a)(3) for a breach of fiduciary duty under ERISA § 409(a), which provides, in pertinent part, that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

ERISA §§ 404(a)(1)(A) and (B) provide, in pertinent part, that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and

11

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  29 U.S.C. § 1104(a)(1).  These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose, and prudence and are the "highest known to the law."  Herman v. NationsBank Trust Co., 126 F.3d 1354, 1361 (11th Cir. 1997) (internal citation omitted).

"[A] qualified preretirement survivor annuity shall be provided to the surviving spouse" of a vested plan participant.  29 U.S.C. § 1055(a)(2).  A plan participant "may elect at any time during the application election period to waive the . . . qualified preretirement survivor annuity form of benefit."  29 U.S.C. § 1055(c)(1)(A)(i).  Such an election takes effect only if:

> (i) the spouse of the participant consents in writing to such election,
> (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and
> (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public . . . .

29 U.S.C. § 1055(c)(2)(A).

In the instant case, the Court agrees with Defendants that Plaintiff was no longer a beneficiary under the terms of the Plan after Jimmy married Beulah and that Plaintiff's claims against Defendants are due to be dismissed.

Notwithstanding Beulah's execution of the prenuptial agreement disclaiming Jimmy's retirement benefits, Beulah became the sole beneficiary to Jimmy's benefits once she and Jimmy married, as there was no valid spousal waiver under the terms of the Plans.  The Prenuptial Agreement was not due to be considered in determining who was the proper beneficiary of the 401(k) and Pension Plan benefits, as a prenuptial agreement is not an effective spousal waiver under ERISA's strict requirements.  See, e.g., Greenebaum Doll & McDonald PLLC v. Sandler, 256 F. App'x 765, 767 (6th Cir. 2007) ("There is little support for the notion that a prenuptial agreement by itself can satisfy ERISA's spousal-consent requirement."); Hagwood v. Newton, 282 F.3d 285, 290 (4th Cir. 2002) ("In reaching our conclusion that premarital agreements generally cannot fulfill the [spousal waiver] requirements of 29 U.S.C. § 1055(c), we join the unanimous view of other federal courts that have considered the question."); Nat'l Auto. Dealers & Assoc. Retirement Trust v. Arbeitman, 89 F.3d 496, 502 (8th Cir.1996) (holding that an agreement signed before the marriage failed to satisfy the waiver requirements of ERISA or the plans); Hurwitz v. Sher, 982 F.2d 778, 782 (2d Cir.1992) (holding that premarital agreements "do not constitute effective waivers under ERISA").  Thus, in the absence of an effective spousal waiver, Jimmy's designation of Billy as the beneficiary had to yield to Beulah's rights under the Plans as Jimmy's surviving spouse.

In fact, in the state court proceedings that Billy initiated against Beulah, Billy did not challenge the plan administrator's statutory duty under ERISA to distribute the funds to Beulah.  Moore v. Moore, 297 So. 3d 359, 362 (Ala. 2019) ("Although Billy does not challenge the fact that the plan administrator had a statutory duty under ERISA to distribute those funds to Beulah, he argues that, once those funds were distributed to her, the lack of a valid ERISA spousal waiver had no bearing on whether he could recover those funds through a breach-of-contract action.").  Plaintiff acknowledges the same in the instant litigation, as he states in his opposition brief that "Plaintiff conceded there – as he does here – that the Plan benefits were technically required to be distributed to Beulah under ERISA/the Plans . . . ."  (Doc. No. 18 at 24.)  The Supreme Court of Alabama specifically determined that Jimmy and Beulah's prenuptial agreement was not a valid spousal waiver and that the funds were properly disbursed to Beulah by the plan administrator.  Id. at 364 ("Under these circumstances, there was no valid waiver by Beulah under 29 U.S.C. § 1055(c)(2)(A) of her surviving spousal rights.  Thus, the funds were properly distributed to her by the plan administrator.").  This Court agrees with the well-reasoned analysis of the Supreme Court of Alabama.

Significantly, ERISA obligates a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).  Based on the terms of the Plans, Billy was not a beneficiary.

14

As such, Defendants owed no ERISA-imposed duties to Billy at the time of Jimmy's death or at the time of the distribution. For this reason, Billy's claims are due to be dismissed. See Crowder, 963 F.3d at 1206 (affirming dismissal of breach of fiduciary duty claims brought by non-beneficiary because defendants owed no ERISA-imposed duties to non-beneficiary).

The Eleventh Circuit likewise has recognized that the right to seek equitable relief under ERISA § 1132(a)(3) is limited to plan "participant[s]," "beneficiar[ies]," and other "fiduciar[ies]." Id. at 1206-07. A litigant who was not a plan participant or beneficiary at the time of the events giving rise to the ERISA claims lacks standing. See id. ("Crowder arguably also lacked statutory authorization to bring a claim for equitable relief based on the defendants alleged breach of their fiduciary duties."); see also Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1240-41 (11th Cir. 2001) ("The only parties that have standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a)."). Insofar as Plaintiff's own allegations and concessions establish that he was not the proper beneficiary under the Plans at the time that the Plan benefits were distributed and that he would not subsequently become the correct beneficiary under the terms of the Plans, Plaintiff does not even have a colorable claim to benefits and thus lacks standing to bring the fiduciary breach and attorneys' fee claims he asserts in this lawsuit. See In Re: Hendricks, Case No.

6:20-cv-935-Orl-40DCI, 2020 WL 9439374, at *4 (M.D. Fla. Nov. 2, 2020) ("[W]hen a plan administrator acts in accordance with the plan documents by paying benefits to the designated primary beneficiary, ERISA forecloses claims by non-beneficiaries against the plan administrator.").

Additionally, in determining the identity of the proper beneficiary and distributing benefits, plan administrators must rely solely on the terms of the plan and have no responsibility to delve into inquiries regarding whether a beneficiary may have waived benefits outside of the terms of the plan, except when a qualified domestic relations order is involved. Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300-01, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009) (explaining that a "plan administrator is obliged to act in accordance with the documents and instruments governing the plan . . . and ERISA provides no exemption from this duty when it comes time to pay benefits"). Even requiring a plan administrator to file an interpleader action to have disputes between competing claimants resolved "destroy[s] a plan administrator's ability to look at the plan documents and records conforming to them to get clear distribution instructions, without going into court." Id. at 301. Thus, even if Plaintiff had standing to bring fiduciary breach claims, the breach of fiduciary claim based on Defendants' failure to file an interpleader action would fail.

In sum, as required by ERISA, the Plan Administration Committee identified the proper beneficiary pursuant to the terms of the Plans, who was Beulah, and promptly paid her. The Plan Administration Committee was not required to consider the Prenuptial Agreement, as that agreement did not constitute a valid spousal waiver under ERISA. Since Plaintiff was not the proper beneficiary at the time of Jimmy's death or the distribution, Defendants owed no ERISA-imposed duties to Plaintiff and Plaintiff has no legal authorization to complain about the distribution that even he concedes was statutorily required to be made to Beulah.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss and **DIRECTS** the Clerk to mark this case closed.

SO ORDERED this 30th day of August, 2021.

*s/  CLARENCE COOPER*
CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE